RUTH E. RASKIN AND BERNARD H. RASKIN,
APPELLANTS, V. SELDIN DEVELOPMENT & MANAGEMENT
COMPANY, A CORPORATION, MILLARD R. SELDIN,
THEODORE M. SELDIN, STANLEY C. SILVERMAN, AND
NORMA R. SILVERMAN, APPELLEES.

331 N.W.2d 783

Filed March 18, 1983. No. 82-034.

Martin A. Cannon of Matthews, Cannon & Riedmann, P.C., for appellants.

John W. Delehant and James D. Sherrets of Kutak Rock & Huie, for appellees.

KRIVOSHA, C.J., McCOWN, and HASTINGS, JJ., and HOWARD, D.J., and COLWELL, D.J., Retired.

HOWARD, D.J.

Plaintiffs in an action for breach of contract appeal from the trial court's dismissal of the petition at the close of plaintiffs' case. The only parties signatory to the contract are the plaintiffs and Millard R. Seldin, Theodore M. Seldin, and Stanley C. Silverman. For reasons unexplained, Norma R. Silverman and Seldin Development & Management Company are also named parties defendant.

The plaintiffs and the defendants were in 1972 owners of varying shares in eight corporations. Plaintiffs were stockholders in five, which owned income-producing assets. Beginning in 1971, Bernard and "the brothers," Millard, Theodore, and Stanley, began to plan the merger of the eight corporations into a new successor corporation, Seldin Development & Management Company (SDM). The formation of SDM included not only the assets of the eight corpo-

rations but also individual partnership assets contributed by Bernard and the brothers in varying amounts, described as "motel operations."

The initial capitalization of SDM was to be $100,000, consisting of 1,000,000 shares of $.10 par common, of which the Raskins were to receive 11.8 percent for a total of 118,000 shares. It was initially contemplated that the individual stockholders would offer to the public on a pro rata basis a total of 225,000 shares, namely, 22½ percent of their 1,000,000 shares. Assuming a public offering price of $14 per share, the Raskins, on a pro rata offering of 22½ percent of their 118,000 shares, would have received $371,700. In addition to the 225,000 stockholder shares to be sold for profit, it was also contemplated that SDM would issue and sell 75,000 new shares for corporation expansion and payment of high-interest debt. At $14 per share the offering would be apportioned:

Stockholders: 225,000 @ $14 = $3,150,000
SDM: 75,000 @ $14 = 1,050,000
$4,200,000

In March 1972, at the time the merger was being finalized, the Raskins negotiated with the brothers for an arrangement whereby the Raskins would sell out all of their shares if there was a public offering. If the price was right, the Raskins were willing to sell out and retire. The Raskins wanted a price of $1,000,000. Since the anticipated public price was to be $14 per share, this required the reduction of the Raskin shares from 118,000 to 71,429, because $14 × 71,429 = $1,000,006. The agreement provided that the other signatory parties would pay to the Raskins any shortage if the price received should be less than $14 per share.

There was concern about the consequences if the contemplated registration and public offering should not, in the event, take place. For reasons which will become apparent, we do not detail the evidence or respond to the arguments concerning the negoti-

ations between the Raskins and the brothers as bearing upon the meaning of the provision in the contract finally adopted: "If said contemplated registration and public offering does not take place by September 30, 1972 (regardless of the reason), then all covenants, terms and conditions of this Agreement shall automatically become void, and the parties will return to their respective stock ownership status prior to the merger." During the period between April and July of 1972 the market for stock deteriorated. It was anticipated that the public offering would be underwritten by a broker on a firm underwriting basis which would guarantee a specific price to the sellers at the risk of the underwriter. Although there was talk of a possible market at $14, and later at $9 per share, the undisputed fact is that the broker never offered any underwriting contract at any price; thus, the public offering never took place by the September 30, 1972, deadline or thereafter. The Raskins were restored to an 11.8 percent ownership in SDM, and earnings of over $53,000 for the first fiscal year ending June 30, 1973, were distributed to the Raskins, based upon their restored ownership of 118,000 shares in SDM. The additional shares were specifically demanded on July 12, 1973, by the Raskins' attorney.

Plaintiffs' theory is that either they are entitled to have the now extinguished corporations somehow reconstituted and their stock interests in those corporations restored (which they concede to be an impossibility) or that they should be awarded judgment of $1,000,006. The plaintiffs overlook the fact that no defendant was obliged to pay any amount to them (except the shortage below $14 per share if, and only if, the offering of shares should be underwritten). If plaintiffs have a cause of action it is for breach of contract. If the alleged breach is for failure to deliver shares of stock, "the measure of recovery . . . is the value of the stock at the time of the breach." *Katleman v. Leon's, Inc.,* 110 Neb. 129,

133, 193 N.W. 254, 255 (1923). No evidence of any kind was offered on the value of the Raskin shares in the five merged corporations at the time of the alleged breach. Additionally, an essential but missing factor in any calculation of damages is the value of the Raskins' 118,000-share interest in SDM and their earnings therefrom. If plaintiffs have sustained damages by whatever measure, it is their duty to present some evidence from which the amount can be reasonably computed. "It is the duty of the district court to refrain from submitting to a jury the issue of damages when the evidence is such that it cannot determine such issue except by indulging in speculation and conjecture." *Midlands Transp. Co. v. Apple Lines, Inc.,* 188 Neb. 435, 440, 197 N.W.2d 646, 649 (1972).

Defendants' motion to dismiss was grounded both on a failure to prove liability and on a failure to prove damages. Because of the view we take of the second ground, we need not consider the first. The judgment of the District Court was correct and is affirmed.

AFFIRMED.